UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

ASAP TREE SERVICE LLC,

        CASE NO.: 3:24-CV-778-TJC-PDB

    Plaintiff,

vs.

L.A. DISASTER RELIEF, LLC,

    Defendant.
_____/

## SUPPLEMENT TO PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT AND/OR FOR SUMMARY FINAL JUDGMENT

Plaintiff, ASAP Tree Service LLC ("ASAP"), hereby files its supplement to ASAP's Motion for Default Final Judgment and/or for Summary Final Judgment (the "Motion") [D.E. 22] pursuant to the Court's *ore tenus* order during its December 2, 2025 hearing on the Motion and Local Rule 3.01(j), as follows:

This supplement is filed at the Court's direction to address the issues raised during the hearing on Plaintiff's motion. In particular, the Court inquired about: (1) an error in Plaintiff's previous calculation of the total amounts invoiced and corresponding payment due; (2) how the amounts claimed correspond to the

invoices submitted as an attachment to the Complaint; (3) the process by which ASAP's invoices were prepared and submitted; and (4) the basis for when payment of those invoices was due. Each issue is addressed in turn below, with reference to the newly signed Declaration of Saul Vasquez Tadeo, managing member of ASAP, attached hereto as Exhibit "A" (the "Supplemental Declaration"). This supplement also provides an updated prejudgment interest calculation through December 23, 2025, reflecting the corrected principal amount owed and interest accrued to date.

## I. Correction of Prior Calculation Error in Amount Invoiced and Owed

In the course of preparing this supplement, Plaintiff identified and corrected a minor error in the total amount previously claimed as invoiced and owed. The original Complaint [D1 ¶ 19] and prior Affidavit of Indebtedness [D22-1] slightly overstated the total invoiced amount by $400 due to a typographical error in one FEMA-related invoice. Specifically, the invoice for work performed between September 20-26, 2020 was listed as $2,663.50 in the Complaint, but the actual invoice reflects a value of $2,263.50. *Compare* D1 ¶ 19, *with* D1-3 at 24. This $400 discrepancy caused the total invoiced sum in the Complaint (originally stated as $412,949.00) to be $400 higher than the true total of $412,549.00. The Supplemental Declaration confirms this correction and attests that ASAP invoiced

LADR a total of $412,549.00 for the work performed during the project period, rather than $412,949.00. *See* Exhibit A ¶ 14.

After accounting for this correction, the remaining balance owed to ASAP has been adjusted accordingly. Defendant L.A. Disaster Relief, LLC ("LADR") made partial payments to ASAP totaling $176,000.00, and failed to pay the remaining balance, which is now correctly stated as **$236,549.00** in principal. *See id.* Mr. Tadeo affirms that $236,549.00 is still due and owing to ASAP for the services provided. This represents the unpaid principal amount after applying all credits for the partial payments received. The corrected principal figure is reflected in the invoices themselves and is now before the Court as the basis for judgment.

## II. Correspondence of Claimed Amounts to Invoices Attached to Complaint

The amounts Plaintiff claims are owed correspond exactly to the invoices that were submitted with the Complaint as Composite Exhibit "A." In his sworn declaration, Mr. Tadeo states that true and correct copies of **all unpaid invoices** for ASAP's work were attached to the Complaint as Composite Exhibit A. *Id.* at ¶ 16. Those invoices detail each project, the work performed, and the agreed-upon price for that work. Each invoice's "Total Due" (for FEMA-funded projects) or "Tree Work Cost" (for privately funded projects) represents the net amount payable to ASAP,

after deducting LADR's contractual share, and these amounts align with the sums ASAP now seeks to recover. *Id.* at ¶¶ 10-13. Indeed, Mr. Tadeo confirms that the invoices "accurately reflect the services that ASAP performed, the agreed-upon charges for each project, and the amounts LADR agreed to pay ASAP." *Id.* at ¶ 16. The outstanding balance of $236,549.00 claimed by Plaintiff is the aggregate of the unpaid portions of those invoices, after crediting the $176,000.00 in payments LADR already made. *Id.* at ¶¶ 14-15.

In the Complaint, Plaintiff listed each invoice and amount (with dates or project descriptors) and attached the actual invoices to substantiate those figures. The corrected total principal ($236,549.00) is derived directly from those invoices. Notably, the Tadeo Declaration makes clear that the $236,549.00 unpaid balance is reflected on the invoices provided to LADR. There is, therefore, a one-to-one correspondence between the amounts claimed in this lawsuit and the supporting invoice documentation in the Court's record. Defendant never disputed any of these invoiced amounts, either at the time they were issued or in this litigation, further evidencing that the sums in question were agreed to and properly owed.

Moreover, all work for which these invoices were issued was fully completed by ASAP as promised. Mr. Tadeo affirms that at no point did LADR or its agents

instruct ASAP to stop work or cease performing the contracted services, and ASAP in fact "completed all work as agreed". *Id.* at 17. The outstanding balance is not attributable to any failure on ASAP's part, but solely to LADR's nonpayment. In sum, the claimed debt is firmly supported by the contemporaneously issued invoices [D1-3] and by Mr. Tadeo's sworn testimony confirming their accuracy and the completion of the underlying work.

### III. Process of Preparing and Submitting Invoices

The process by which ASAP's invoices were prepared and submitted to LADR is detailed in the record, particularly in Mr. Tadeo's declaration. The projects for which ASAP seeks payment fell into two categories – privately funded jobs (paid by property owners or insurers through LADR) and FEMA-funded jobs (performed under LADR's FEMA contract). *Id.* at ¶ 10, 12. ASAP handled invoicing slightly differently for each category, as described below.

For each project that was privately funded (i.e. where LADR's customer was a property owner or an insurance company), ASAP would generate a handwritten invoice upon completion of the project. *Id.* at ¶ 10. Mr. Tadeo personally prepared these invoices, which reflected the agreed-upon lump sum price that LADR was to pay ASAP for that specific job. Each invoice contained a "Description of Work"

summarizing the services performed and stated the agreed total value of the project. Importantly, the invoice then set out the "Tree Work Cost" at the bottom, which represented the net amount due to ASAP after deducting LADR's 20% share (LADR's agreed overhead/profit margin on privately funded jobs). *Id.* at ¶ 11. In practice, ASAP delivered each such invoice directly to LADR's president, Mr. Kyle Adams, approximately 10-15 days after the project's completion. *Id.* This procedure gave LADR a prompt written statement of the amount owed to ASAP for each private project. The invoices in Composite Exhibit A to the Complaint [D1-3] include these handwritten invoices, each of which plainly shows the net amount owed to ASAP as "Tree Work Cost" or "Total Due," and LADR never objected to any of them.

For projects that were performed under LADR's contract with FEMA (emergency storm cleanup work eligible for FEMA reimbursement), the invoicing process was structured to comply with FEMA documentation requirements. A FEMA-appointed monitor was on site to oversee ASAP's work and issued a "ticket" voucher for each tree or limb removed by ASAP. *Id.* at ¶ 12. ASAP collected all such tickets for a given project and forwarded them to LADR for processing. Using the information from these tickets, an invoice for each FEMA-funded project was generated (under Mr. Tadeo's direction) applying the predetermined FEMA rates

for the services documented by the tickets. *Id.* at ¶ 12. Each FEMA project invoice lists the total value of the work performed as the "Sub Total," then lists LADR's 10% share (the contractually agreed retainage for LADR on FEMA jobs) as a line item labeled "10% Retainage," and finally states the "Total Due" – the remaining 90% payable to ASAP – in the bottom right corner. *Id.* at ¶ 13. In other words, for FEMA-related work, LADR would retain 10% of the project's value and the rest was due to ASAP. These invoices were provided to LADR in the regular course of business as well, supported by the underlying FEMA ticket records.

The Tadeo Declaration confirms that Mr. Tadeo either prepared or oversaw the preparation of all invoices – handwritten invoices for private jobs and ticket-based invoices for FEMA jobs – and that all such invoices accurately reflected the services performed and the agreed charges. All of the invoices at issue were submitted to the Defendant (Mr. Adams/LADR) for payment in a timely manner following completion of the work, consistent with the parties' agreement. Notably, paragraph 7 of Mr. Tadeo's earlier Affidavit (submitted with the motion) outlined the parties' understanding that ASAP would perform the work and submit invoices, and that LADR would then submit those invoices to the end payors (FEMA or property owners/insurers) and "timely remit payment" to ASAP for each invoice

after taking its contractual share. Thus, the record demonstrates a clear, agreed process: ASAP did the work, documented it through invoices, delivered those invoices to LADR (who raised no dispute), and LADR was expected to forward them for payment and promptly pay ASAP the amounts due.

IV. <u>Basis for When Payment of Invoices Was Due</u>

The basis for the payment due date of the invoices is grounded in the parties' agreement and the timing of project completion. All of ASAP's work for LADR was finished by late November 2020, and ASAP had submitted all corresponding invoices to LADR by that time. Under the oral agreement between Mr. Tadeo (for ASAP) and Mr. Adams (for LADR), LADR was obligated to remit payment to ASAP for each invoice in a timely manner after receiving payment from the relevant funding source (and after retaining its contractual percentage). In practice, this meant that once the projects were done and invoices delivered (generally within two weeks of completion for private jobs), ASAP expected prompt payment.

Critically, Mr. Tadeo has attested – and the unrebutted evidence shows – that Defendant LADR was to pay all outstanding invoice amounts no later than December 1, 2020. This date effectively served as the agreed deadline for payment of the work ASAP performed from August through November 2020. By December

1, 2020, all invoiced sums were due in full to ASAP, and Defendant's failure to pay by that date constituted a breach of the payment agreement. The Plaintiff's pending motion and evidence make clear that December 1, 2020 is the date when the debt became fixed and payable, triggering ASAP's entitlement to prejudgment interest from that point forward. Stated differently, under the terms of the parties' understanding, ASAP should have been paid in entirety by December 1, 2020, and LADR's non-payment as of that date made the amount owed a liquidated sum subject to interest.

The selection of December 1, 2020 as the accrual date for interest is supported by the record. In his declaration, Mr. Tadeo (the affiant) confirms that LADR was obligated to pay the invoices by that date, and the Motion for Final Judgment likewise cites this agreed deadline. Accordingly, all invoices became due and payable on or before December 1, 2020, and LADR's failure to make payment by that date is the basis for the damages sought and for the calculation of prejudgment interest.

### V. Prejudgment Interest Calculation (Updated through December 23, 2025)

In light of the above correction to the principal amount and the passage of time, Plaintiff has updated the calculation of prejudgment interest through

December 23, 2025 (the date of this supplement's filing). *See* Exhibit "B." As discussed, prejudgment interest in this diversity action is governed by Florida law, which mandates interest from the date of the loss (here, the agreed due date of December 1, 2020) at the applicable statutory rates. Florida's statutory interest rate has fluctuated over the relevant period, and the calculation accounts for quarterly adjustments as required by Fla. Stat. §55.03.

Using the principal amount of $236,549.00 and commencing on December 1, 2020, the accrued prejudgment interest through December 23, 2025 is $81,669.31. This figure is confirmed by the Updated Supplemental Prejudgment Interest Calculator prepared by Plaintiff, which has been provided to the Court. The interest calculation applies each quarterly interest rate from Q4 2020 onward to the principal, yielding the total interest above. For example, the statutory rate for the last quarter of 2020 (effective October 1, 2020) was 5.37%, which applied from December 1, 2020 to year-end, followed by the rates for 2021, 2022, 2023, and 2024 as they changed each quarter, and so on. This results in an interest accrual of $81,669.31 over the five-year period. Adding the interest to the principal yields a total amount of $318,218.31 as of December 23, 2025.

Plaintiff requests that the Court award prejudgment interest in the amount of $81,669.31 (or such further amount as accrued through the date of judgment) in addition to the principal debt. This updated interest computation replaces the earlier interest figure ($68,604.03 through May 14, 2025) that was provided in Plaintiff's initial motion papers, and reflects interest continuing to accrue at the statutory rate up to the present. Should the Court enter judgment after today, Plaintiff will provide a per diem rate (currently approximately $56.06 per day, based on the Q4 2025 rate of 8.65%) so that the judgment can include interest up to the date of entry. Florida law is clear that prejudgment interest is a matter of right on liquidated damages in a contract action, from the date the payment was due, and Plaintiff has demonstrated both the due date and the applicable rates to calculate the precise amount owed.

## VI.  Conclusion

Plaintiff ASAP Tree Service LLC has established through record evidence that it is owed $236,549.00 in principal for completed storm cleanup services, as documented by the invoices in Composite Exhibit A to the Complaint [D1-3] and confirmed by Mr. Tadeo's sworn declarations. The previous minor arithmetic error has been corrected, and the claimed amounts now exactly match the supporting

invoices on file. Defendant LADR received the invoices, benefitted from the work, and never objected to the amounts, yet failed to pay the balance that was due by December 1, 2020. Consequently, prejudgment interest has accrued on the liquidated principal from that date, totaling $81,669.31 through December 23, 2025.

For the foregoing reasons, and those set forth in Plaintiff's Motion and supporting evidence, Plaintiff respectfully requests that the Court grant the Motion for Default Final Judgment and/or Summary Final Judgment. Plaintiff seeks entry of a Final Judgment in the updated amount of $318,218.31 (representing $236,549.00 in principal and $81,669.31 in prejudgment interest through 12/23/2025), plus additional prejudgment interest accruing thereafter until the date of judgment, and post-judgment interest as provided by law. Plaintiff also asks that the Court confirm that all work was completed as agreed and that the full amount of the invoices is due and payable. Plaintiff stands ready to submit any further information the Court may require and thanks the Court for its consideration of this supplemental memorandum.

Respectfully submitted this 23rd day of December 2025,

s/ Patrick Brooks LaRou

                                                Brian H. Pollock, Esq. (174742)
                                                brian@fairlawattorney.com
                                                Patrick Brooks LaRou, Esq. (1039018)
                                                brooks@fairlawattorney.com
                                                FAIRLAW FIRM
                                                135 San Lorenzo Avenue, Suite 770
                                                Coral Gables, Florida 33146
                                                Telephone: (305) 230-4884
                                                *Counsel for Plaintiff*