UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

ASAP TREE SERVICE LLC,

        CASE NO.: 3:24-CV-778-TJC-PDB

    Plaintiff,

vs.

L.A. DISASTER RELIEF, LLC,

    Defendant.
_____/

**DECLARATION OF SAUL VASQUEZ TADEO**
**PURSUANT TO 28 U.S.C. § 1746**

    I, Saul Vasquez Tadeo, make the following declaration pursuant to 28 U.S.C. § 1746, and under penalty of perjury, state as follows:

    1.    I am the managing member of ASAP Tree Service LLC ("ASAP"), and I am authorized to execute this Declaration on its behalf.

    2.    I make this Declaration based on my personal knowledge.

    3.    In August 2020, Kyle Adams, the President of Defendant L.A. Disaster Relief, LLC ("LADR"), requested that ASAP perform emergency storm cleanup and debris removal services for LADR in the aftermath of the August 10-11, 2020 derecho storm that devastated parts of the Midwestern United States.

    4.    Acting in my capacity as ASAP's managing member, I agreed on ASAP's behalf to provide the requested storm cleanup services for LADR. Mr.

1

Adams and I further agreed that LADR would compensate ASAP at a reasonable rate, to be determined on a per-project basis, for the work performed.

5. As part of our agreement, Mr. Adams and I agreed to a payment structure that differed based on the source of funding for each project.

6. For any project where the property owner or the property owner's insurance was responsible for payment, LADR would retain twenty percent (20%) of the total project amount as LADR's share, and ASAP would receive the remaining eighty percent (80%) of the project amount.

7. For any project funded through LADR's contract with the Federal Emergency Management Agency ("FEMA"), LADR would retain ten percent (10%) of the total project amount as its share, and ASAP would receive the remaining ninety percent (90%).

8. Kyle Adams and I agreed that LADR would pay ASAP on a weekly basis for the services it performed, beginning in the third week of operations. Specifically, LADR agreed to pay ASAP each week for the work completed two weeks prior—such that during the third week of work, ASAP would be paid for services performed in the first week; during the fourth week, for the second week's work; and so on.

9. Before ASAP commenced work on each project, either I or my brother, Eli Vasquez Tadeo (who also works for ASAP), met with Mr. Adams at the job site to inspect the scope of work and mutually agreed on the total price that ASAP would charge for that project.

2

10. Upon completion of each project that was privately funded (i.e. paid by a property owner or insurer), I prepared a handwritten invoice reflecting the agreed-upon amount that LADR was to pay ASAP for that project. I delivered each such invoice to Mr. Adams approximately 10-15 days after the project's completion.

11. Each of these handwritten invoices includes a "DESCRIPTION OF WORK" section showing the work performed and the agreed total value of the project. The invoice then lists "TREE WORK COST:" at the bottom right, which represents the net amount payable to ASAP after deducting LADR's 20% share from the total.

12. For projects funded through LADR's FEMA contract, a FEMA-appointed monitor oversaw ASAP's work and issued a "ticket" voucher for each tree or tree limb that ASAP removed. ASAP collected all of the tickets for each FEMA-funded project and forwarded them to LADR. LADR used the information from these tickets to prepare an invoice for each FEMA-funded project, using the predetermined rates for the services documented by the tickets.

13. Each FEMA project invoice lists the total value of the work performed as the "SUB TOTAL." It then lists LADR's 10% share as a "10% RETAINAGE," and shows the remaining amount due to ASAP as the "TOTAL DUE" in the bottom right corner of the invoice.

14. Between August 2020 and November 2020, ASAP performed all of the storm cleanup services that LADR requested, in accordance with our agreement.

3

ASAP invoiced LADR a total of $412,549.00 for the work completed during this period. ASAP's previous calculation of this total, as stated in the Complaint at paragraph 19 and in my prior Affidavit of Indebtedness signed May 13, 2025, contained a typographical error. In particular, the amount invoiced and owed for the FEMA-funded work performed between September 20, 2020 and September 26, 2020 is $2,263.50, as reflected on the invoice, not $2,663.50.

15. LADR made partial payments to ASAP totaling $176,000.00 for the work performed. However, LADR has failed to pay the remaining balance of $236,549.00, which is still due and owing to ASAP. These amounts are reflected in the invoices that ASAP provided to LADR.

16. True and correct copies of all unpaid invoices for ASAP's work are attached to the Complaint in this case as composite Exhibit "A." I personally prepared the invoices for the privately funded projects, and the invoices for the FEMA-funded projects were generated under my direction using ASAP's FEMA ticket records. These invoices accurately reflect the services that ASAP performed, the agreed-upon charges for each project, and the amounts LADR agreed to pay ASAP.

17. At no time did Mr. Adams, nor anyone else acting on LADR's behalf, direct ASAP to stop work or cease performing the requested storm cleanup services. ASAP completed all work as agreed, and the outstanding balance described above is not the result of any work stoppage or termination by LADR.

4

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

FURTHER DECLARANT SAYETH NAUGHT.

## **DECLARATION**

By my signature below, I execute this declaration in Marion County, Indiana, and declare under penalty of perjury that the foregoing is true and correct.

By: *Saul Vasquez Tadeo*
      Saul Vasquez Tadeo (Dec 23, 2025 22:03:27 EST)
SAUL VASQUEZ TADEO

23/12/2025
_____
DATE

5